IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| VON LESTER TAYLOR,<br><br>Petitioner,<br><br>vs.<br><br>SCOTT CROWTHER, Warden, Utah State Prison,<br><br>Respondent. | ORDER AND MEMORANDUM DECISION DENYING RULE 23(C) MOTION FOR RELEASE AND<br>GRANTING MOTION TO STAY<br><br>Case No. 2:07-CV-194-TC |

On March 10, 2020, the court issued an order granting Petitioner Von Lester Taylor's habeas petition. (See Order Granting Second Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 414 (finding guilty plea unconstitutional and vacating sentence based on that guilty plea).) Although Respondent (the State) has appealed the decision, Mr. Taylor, citing to his successful petition, moves for release under Rule 23(c) of the Federal Rules of Appellate Procedure. The State opposes the request for release and has simultaneously filed a motion to stay the order granting Mr. Taylor's petition. For the reasons set forth below, the court denies Mr. Taylor's motion for release and grants the State's request to stay the decision pending resolution on appeal.

## APPLICABLE STANDARD

Rule 23 of the Federal Rules of Appellate Procedure governs custody or release of a

1

prisoner in a habeas corpus proceeding when the court's decision granting the petition has been appealed. Mr. Taylor relies on subsection (c) of the rule, which addresses "Release Pending Review of Decision Ordering Release." That subsection reads,

> [w]hile a decision ordering the release of a prisoner is under review, the prisoner must—unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise—be released on personal recognizance, with or without surety.

Fed. R. App. P. 23(c).

The rule creates a presumption that a successful habeas prisoner must be released. Hilton v. Braunskill, 481 U.S. 770, 777 (1987). But the State, to avoid Mr. Taylor's release, may challenge the Rule 23(c) request and avoid release by rebutting the presumption.

Hilton sets forth the standard for rebutting the presumption. There, the United States Supreme Court directed courts, when deciding whether to grant a motion for release under Rule 23(c), to apply "the general standards for staying a civil judgment." Id. at 775. That requires the court to balance a series of factors, including the following: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id. at 776. To rebut the presumption, the State must show that those "traditional stay factors tip the balance against" release of Mr. Taylor. Id. at 777. In that balancing, the court may also consider whether the prisoner poses a flight risk and a danger to the public if released. Id. Nevertheless, "[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." Id.

Because those factors also apply to the court's evaluation of the State's Motion to Stay, see id. at 776, denying Mr. Taylor's request for release "has the same effect as the court's

issuance of a stay of that order." Id. at 775–76.  Accordingly, the court analysis below applies equally to Mr. Taylor's motion and the State's motion.

**Mr. Taylor's Request for Rule 23(c) Release**

In his motion, Mr. Taylor argues that his health issues strengthen the presumption.  First he discusses, in a sealed portion of his motion, the health problems "that have been plaguing him for a long time, issues that have not been diligently addressed by the Utah Department of Corrections."  (Taylor's Motion for Rule 23(c) Release at 3–4, ECF No. 417 ("Rule 23(c) Motion").)  He says his release would allow him to seek proper medical care.  He also says that the COVID-19 outbreak "adds urgency to his request."  (Id. at 5.)

At the time he drafted his motion and supporting brief, he acknowledged that the Utah State Prison had no confirmed COVID-19 cases.  But he cites to statistics about the disease's spread throughout the world, in the general population in Utah, and in the Federal Bureau of Prisons system, where, at that time, two staff members had tested positive.  He also points to situations where local correctional facilities have begun releasing certain inmates to reduce the impact of the virus on prisoners.  Given this information, Mr. Taylor says it is inevitable the virus will make its way into the prison and that he faces the very real risk of contracting the virus, particularly because of "his inability to practice 'social distancing' once [the virus] hits the prison" and his vulnerable physical state.  (Id.)  If he contracts the virus, he "believes that [that] deadly disease can substantially and permanently injure him."  (Taylor Reply Supp. Rule 23(c) Motion at 10, ECF No. 434.)

He suggests ways to minimize the risk of flight while his case is pending.  Two of his siblings "have invited Mr. Taylor to live with them if he is released on bond, and have vowed to take responsibility for supervising him and aiding his compliance with whatever restrictions the

Court imposes." (Rule 23(c) Motion at 9.) He also suggests that the court "may impose restrictions on his freedom, including electronic monitoring, telephone-reporting requirements, drug and alcohol prohibitions, and/or house arrest. He pledges to comply with any such restrictions." (Id.)

Mr. Taylor's argument, in light of other factors discussed below, is not sufficient to obtain release.

**Rebuttal of Rule 23(c) Presumption and the State's Motion to Stay**

**Likelihood of Success on Appeal**

The State articulates a series of reasons why it has a likelihood of success on appeal. Those reasons are all based on its overall assertion that "at the very least, [Mr. Taylor] is guilty as an accomplice." (State Mot. Stay at 5, ECF No. 419; State Reply Supp. Mot. Stay at 4, ECF No. 440.) The State argues that because Mr. Taylor is liable as an accomplice, he was not entitled to a Schlup hearing, which requires a showing of factual innocence. It also contends that, contrary to the court's finding, Mr. Taylor did plead guilty to accomplice liability. And finally, according to the State, Mr. Taylor's trial counsel did not provide ineffective assistance of counsel because he rightly assumed that Mr. Taylor "was guilty of both murders, whether as a principal or as an accomplice." (State's Reply Supp. Mot. Stay at 4.)

The State raised its accomplice liability theory throughout the proceedings. The court addressed and rejected various iterations of that theory in the court's decisions leading to the order granting Mr. Taylor's habeas petition. (See Order & Mem. Decision Granting Evid. Hr'g at 20–24, ECF No. 264; Findings of Fact & Conclusions of Law Regarding Claim of Actual Innocence at p. 5 n.3, ECF No. 399.) The State's motion simply repeats arguments the court has already dismissed.

Additionally, the State's assertion that it has a strong likelihood of success at trial is not something the court will consider. The court's habeas order addressed Mr. Taylor's ineffective-assistance-of-counsel claim in connection with his guilty plea. Mr. Taylor never went to trial. Whether the State would prevail at a new trial is not the issue on appeal.

For the foregoing reasons, the court finds that the State has not shown that it has a strong likelihood of success on the merits.

**Harm to the State**

The State insists that if a stay is not granted it will be irreparably harmed "because it will be forced to proceed with trial instead of appeal or while an appeal is pending." (State's Opp'n Rule 23(c) Motion at 9, ECF No. 428.) That, argues the State, may moot its appeal because the length of time to conclude an appeal may be longer than the time it would take to try Mr. Taylor.

In support of its argument, the State cites cases that concern habeas court orders to correct the constitutional defect at trial. (See Mot. to Stay at 7–8; State's Opp'n to Rule 23(c) Motion at 9.) In those cases, the court's orders to correct the defect forced the state, as a practical matter, into a Catch-22 situation: by following the court's mandate to fix the problem, the state's right to obtain a ruling on appeal could potentially be eliminated because the time to re-try the defendant could be less than the time the appellate court would take to issue a decision. The State cites, as an example supporting its position, the decision in Bauberger v. Haynes, 702 F. Supp. 2d 588 (M.D.N.C. 2010). The Bauberger court described the state's "Catch-22" situation and concluded that

> absent a stay, [the State] will suffer irreparable harm, because it is highly unlikely that an appeal could be completed by the time it would have to retry the case [as the habeas order mandated]. If it loses on retrial, the State will lose a conviction it may otherwise have sustained on appeal.

Id. at 595–96.

5

But here the court has not ordered the State to retry Mr. Taylor. Mr. Taylor never went to trial, so there is no trial defect to correct. Because the nature of this court's order is different than the orders discussed in the cases cited by the State, the irreparable harm analysis in those cases is not applicable. If the State chooses to recharge and then negotiate a plea or go forward with a trial on Mr. Taylor's guilt, that is its prerogative. But by doing so, the State is not losing its right to appeal. In short, the State would not be irreparably harmed absent a stay.

**Harm to Mr. Taylor**

As described above, Mr. Taylor contends that he will be substantially injured if he is not released. As a prisoner, he says, he faces an increased risk of contracting the COVID-19 virus in the Utah State Prison and, given his poor health, such an infection would be life threatening, worsened by what he believes is the prison's inability to provide the medical care necessary to treat a life-threatening situation. He then contends that if he is released to the care and custody of his family, he will be in a safer environment.

The court finds that the risk of infection clearly exists (despite the State's effort to downplay that risk[1]). But the information provided by Mr. Taylor and the chain of events he envisions is too speculative at this time to provide a basis for release under Rule 23(c).

Mr. Taylor also argues that the court has vacated his sentence, and, as a consequence, he is being wrongfully detained. (See Rule 23(c) Motion at 8.) If there were no appeal, his point would be compelling. But the legal process is not over. The State has appealed the decision to

---

[11] The State presents the Utah Department of Corrections' "policies and procedures [created] to attempt to keep the virus out of the prison and away from the prisoners." (State's Opp'n to Mot. for Rule 23(c) Release at 4, ECF No. 428 (citing to "Division of Prison Operations COVID-19 Action Plan, as of 3-23-2020, attached as Addendum A" to the brief).)

vacate Mr. Taylor's sentence. If the State prevails, the sentence that resulted in Mr. Taylor's custody will remain in place.[2] The United States Supreme Court has stated that

> [a]lthough the decision of a district court granting habeas relief will have held that the judgment of conviction is constitutionally infirm, that determination itself may be overturned on appeal before the State must retry the petitioner. This being the case, we do not agree that the Due Process Clause prohibits a court from considering, along with the other factors that we previously described, the dangerousness of a habeas petitioner as part of its decision whether to release the petitioner pending appeal.

Hilton, 481 U.S. at 779.

As discussed below, the "other factors" to which the Hilton court refers overcome Mr. Taylor's arguments that he will be substantially harmed if he is not released.

**The Public's Interest**

The court must consider "where the public interest lies." Id. at 776. As part of that analysis, the court can consider whether Mr. Taylor poses a danger to the community and whether he is a flight risk. Id. at 777. The court concludes that he is both.

Mr. Taylor poses a risk of danger to the community. The court cannot ignore the seriousness of the crimes in which, to some extent, Mr. Taylor was admittedly involved. Mr. Taylor's participation in events surrounding the unprovoked and violent murder of two women shows his capacity for violence.

As for the risk of flight, the court finds that Mr. Taylor's suggestion that the court either require electronic monitoring or order house arrest is simply not sufficient to curb that risk. Mr. Taylor has fled from authorities before (he absconded from a halfway house before breaking into

---

[2] "The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal" is another legitimate consideration. Hilton, 481 U.S. at 777. That interest "will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." Id. at 777. Because Mr. Taylor's death sentence is, in essence, the "longest" sentence a defendant could face, this factor weakens Mr. Taylor's argument that he will be substantially harmed if he is held without a conviction.

the Tiede's cabin, and he took extreme measures to evade capture after the murders). Even more compelling is the fact that if the State succeeds on appeal, Mr. Taylor faces execution. Furthermore, even if he prevails on appeal, he faces new charges of aggravated murder, accomplice to aggravated murder, attempted murder, and kidnaping. He has an undeniable motivation to avoid those fates. Finally, if Mr. Taylor flees, the public's interest in having substantial legal issues and serious criminal matters fully and finally aired in the trial and appellate courts would be obstructed.

**Balancing the Factors**

The court has broad discretion when deciding whether to release a habeas petitioner. Hilton, 481 U.S. at 775. As the United States Supreme Court said in Hilton, consideration of the factors governing a Rule 23(c) motion "cannot be reduced to a set of rigid rules." Id. at 777. Each case is different and "the traditional stay factors contemplate individualized judgments …." Id.

As already stated above, the first three factors do not favor either party. But the public's interest in this particular case weighs heavily in favor of continuing Mr. Taylor's custody and staying the court's decision pending resolution of the State's appeal to the Tenth Circuit. In short, the presumption of release has been overcome. Accordingly, the court denies his Rule 23(c) Motion. For the same reasons, the court grants the State's Motion to Stay. See McClendon v. City of Albuquerque, 79 F.3d 1014, 1020 (10th Cir. 1996) (applying the Hilton v. Braunskill factors to analyze a motion to stay under Federal Rule of Appellate Procedure 8).

**ORDER**

For the foregoing reasons, Mr. Taylor's Motion for Rule 23(c) Release (ECF No.415) is

DENIED, and the State's Motion to Stay (ECF No. 419) is GRANTED.

SO ORDERED this 6th day of April, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge